THOMAS E. FRANKOVICH (State Bar No. 074414)
THOMAS E. FRANKOVICH,
*A PROFESSIONAL LAW CORPORATION*
4328 Redwood Hwy., Suite 300
San Rafael, CA 94903
Telephone:    (415) 674-8600
Facsimile:    (415) 674-9900
Email:        tfrankovich@disabilitieslaw.com

Attorney for Plaintiff
BYRON CHAPMAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON CHAPMAN,<br><br>          Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company,<br><br>          Defendants. | CASE NO.  2:14-cv-09798-DSF-MAN<br>Civil Rights<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1st CAUSE OF ACTION:** For Denial of Access by a Public Accommodation in Violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101, *et seq.*)<br><br>**2nd CAUSE OF ACTION:** For Denial of Full and Equal Access in Violation of California Civil Code §§54, 54.1 and 54.3<br><br>**3rd CAUSE OF ACTION:** For Denial of Accessible Sanitary Facilities in Violation of California Health & Safety Code §19955, *et seq.*<br><br>**4th CAUSE OF ACTION:** For Denial of Access to Full and Equal Accommodations, Advantages, Facilities, Privileges and/or Services in Violation of California Civil Code §51, *et seq.* (The Unruh Civil Rights Act)<br><br>**DEMAND FOR JURY** |

1   Plaintiff BYRON CHAPMAN, complains of defendants TERRY TOGNAZZINI, an

2   individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited

3   Liability Company and alleges as follows:

4   **INTRODUCTION:**

5   1.   This is a civil rights action for discrimination against persons with physical

6   disabilities, of which class plaintiff BYRON CHAPMAN and the disability community are

7   members, for failure to remove architectural barriers structural in nature at defendants'

8   QUALITY INN, a place of public accommodation, thereby discriminatorily denying plaintiff and

9   the class of other similarly situated persons with physical disabilities access to, the full and equal

10  enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and

11  accommodations thereof.  Plaintiff seeks injunctive relief and damages pursuant to the

12  Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*; California Civil Code §§51,

13  51.5 and 54, *et seq.*; and California Health & Safety Code §19955, *et seq.*

14  2.   Plaintiff BYRON CHAPMAN  is a person with physical disabilities who, on or

15  about April 26, 2013, April 27, 2013, October 10, 2013, October 11, 2013, October 12, 2013,

16  July 20, 2014, August 29, 2014, January 16, 2015, January 17, 2015 and January 18, 2015 and

17  (**"deterred thereafter"**), was an invitee, guest, patron, customer at defendants' QUALITY INN,

18  in the City of Anaheim, California.  At said times and place, defendants failed to provide proper

19  legal access to the inn, which is a "public  accommodation" and/or a "public facility" including,

20  but not limited to parking, lobby, breakfast room, guest rooms, pool and pedestrian ramp.

21  Plaintiff BYRON CHAPMAN has a history of patronizing the subject QUALITY INN formerly

22  called the COMFORT INN dating back to December 5, 2009, December 6, 2009, July 18, 2011

23  and September 25, 2011.  The denial of access was in violation of both federal and California

24  legal requirements, and plaintiff BYRON CHAPMAN suffered violation of his civil rights to full

25  and equal access, and was embarrassed and humiliated.

26  ///

27  ///

28  ///

**JURISDICTION AND VENUE:**

3.    **Jurisdiction:**   This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*. Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are also brought under parallel California law, whose goals are closely tied with the ADA, including but not limited to violations of California Civil Code §51, *et seq.* and §54, *et seq.*, California Health & Safety Code §19955 *et seq.*, including §19959; and California Building Code.

4.    **Venue:**   Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located at/near 1251 N. Harbor Boulevard, in the City of Anaheim, County of Orange, State of California, and that plaintiff's causes of action arose in this county.

**PARTIES:**

5.    Plaintiff BYRON CHAPMAN is a "physically handicapped person," a "physically disabled person," and a "person with physical disabilities" (hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning, but the legislative scheme in Part 5.5 of the Health & Safety Code uses the term "physically handicapped persons" and the Unruh Civil Rights Act, §§51, 51.5, 54 and 54.1, and other statutory measures refer to protection of the rights of "physically disabled persons").  Plaintiff BYRON CHAPMAN is a "person with physical disabilities," as defined by all applicable California and United States laws. Plaintiff BYRON CHAPMAN has a spinal cord injury which affects both lower extremities (i.e., right leg has no motor skills but heightened sensitivity and left leg has approximately 15% to 20% motor skills and no sensitivity).  Plaintiff BYRON CHAPMAN requires the use of a wheelchair to travel about in public.

///

///

///

1   Consequently, plaintiff BYRON CHAPMAN is a member of that portion of the public whose

2   rights are protected by the provisions of Health & Safety Code §19955, *et seq.* (entitled "Access

3   to Public Accommodations by Physically Handicapped Persons") and the protections of the

4   Unruh Civil Rights Act, Civil Code §§51 and 51.5 the Disabled Persons Act, Civil Code §54,

5   and the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

6       6.      **DEFINITIONS:**

7           a.      **ADAAG** - The Americans with Disabilities Act Accessibility Guidelines

8                   of 1990; and 2010 ADA Standards—

9           b.      **2010 ADA STANDARDS** - The revised regulations for Title II and III of

10                  the Americans with Disabilities Act of 1990 in the Federal Register as of

11                  September 15, 2010;

12          c.      **ARCHITECTURAL BARRIERS** - Architectural barriers are physical

13                  features that limit or prevent people with disabilities from obtaining the

14                  goods or services that are offered.  They can include but are not limited to

15                  the following examples:  parking spaces that are too narrow to

16                  accommodate people who use wheelchairs; a step or steps at the entrance

17                  or to part of the selling space of a store; round doorknobs or door hardware

18                  that is difficult to grasp; aisles that are too narrow for a person using a

19                  wheelchair; electric scooter, or a walker; a high counter or narrow

20                  checkout aisles at a cash register, and fixed tables in eating areas that are

21                  too low to accommodate a person using a wheelchair or that have fixed

22                  seats that prevent a person using a wheelchair from pulling under the table.

23                  Excerpted from the *"ADA Guide for Small Businesses"* with an

24                  interlineation modification. http://www.ada.gov/smbustxt.htm.

25                  (The descriptive use of the word "barriers" as used herein is synonymous

26                  with architectural barriers).

27   ///

28   ///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES       CASE NO. 2:14-cv-0978-DSF-MAN

d.     **ELEMENTS -** An architectural or mechanical component of a building, facility, space, or site (e.g., telephone, curb ramp, door, flush valve, drinking fountain, seating, or water closet, toilet seat, dispensers) and/or placement or lack thereof.

e.     **CATEGORICAL ARCHITECTURAL BARRIERS -** Are elements and facilities which are, or can be architectural barriers standing alone or in combination with one another where the element(s)/facility(s) is/are noncomplying or where the combination thereof creates a category. For example:  such as a parking lot, entrance, restroom, lobby, guest room, dining area.

f.     **PHYSICAL FEATURES** - Are synonymous with "Elements."

g.     **FACILITY -** All or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property located on a site.

h.     **ENTRANCE -** Any access point to a building or portion of a building or facility used for the purpose of entering.  An entrance includes the approach walk, the vertical access leading to the entrance platform, the entrance platform itself, vestibules if provided, the entry door(s) or gate(s), and the hardware of the entry door(s) or gate(s).

i.     **CLEAR FLOOR SPACE -** The minimum unobstructed floor or ground space required to accommodate a single, stationary wheelchair and occupant.

j.     **ACCESSIBLE ROUTE -** A continuous unobstructed path connecting all accessible elements and spaces of a building or facility.  Interior accessible routes may include corridors, floors, ramps, elevators, lifts, and clear floor space at fixtures.  Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts.

///

k.    **PATH OF TRAVEL -** A continuous path connecting all elements and spaces of a building or facility.

l.    **NON COMPLYING -** Not complying with ADAAG and/or the "Readily Achievable Standard" of 28 CFR §36.304.

**PRELIMINARY FACTUAL ALLEGATIONS:**

7.    The COMFORT INN/QUALITY INN, is a hotel, located at/near 1251 N. Harbor Boulevard, Anaheim, California 92801.  The COMFORT INN/QUALITY INN, its  parking, lobby, breakfast room, guest rooms, pool and pedestrian ramp**,** and its other facilities are each a "place of public accommodation or facility" subject to the barrier removal requirements of the Americans with Disabilities Act.  On information and belief, each such facility has, since July 1, 1970, undergone "alterations, structural repairs and additions," each of which has subjected the COMFORT INN/QUALITY INN  and each of its facilities, its  parking, lobby, breakfast room, guest rooms, pool and pedestrian ramp to disability access requirements per the Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the California Building Code.

8.    Defendant RR TOG LLC, a California Limited Liability Company is the owner of  the real property (land and building) located at or near 1251 N. Harbor Boulevard, Anaheim, California.

9.    Defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company (hereinafter alternatively collectively referred to as "defendants") are the owners and operators, lessors and/or lessees, or agents of the owners, lessors and/or lessees, of the public accommodation known formerly as the COMFORT INN and currently as the QUALITY INN, located at/near 1251 N. Harbor Boulevard, Anaheim, California, or of the building and/or buildings which constitute said public accommodation.

///

///

///

///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES          CASE NO. 2:14-cv-0978-DSF-MAN

10.     At all times relevant to this complaint, defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, own and operate in joint venture the then subject COMFORT INN now the QUALITY INN as a public accommodation.  This business is open to the general public and conducts business therein.  The business is a "public accommodation" or "public facility" subject to the requirements of California Civil Code §§51, 51.5 and 54, *et seq.,* Health and Safety code §19955, *et seq.,* and the ADA, 42 U.S.C. §12101, *et seq.*

11.     On or about year of 1994, defendants' and each of them purchased and/or took possessory control of the premises now known as QUALITY INN.  At all times prior thereto, defendants' and each of them were aware of their obligation prior to the close of escrow, or upon taking possessory interest that public accommodations had a duty to identify and remove architectural barriers and were aware that COMFORT INN now known as QAULITY INN was not accessible to the disabled.  Nevertheless, defendants' and each of them, operated the subject inn as though it was accessible.

12.     At all times relevant to this complaint, defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company are jointly and severally responsible to identify and remove architectural barriers at the subject COMFORT INN/QUALITY INN pursuant to Code of Federal Regulations title 28, section 36.201(b), which states in pertinent part:

> **§ 36.201     General**
>
> (b)     *Landlord and tenant responsibilities.* Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.
> 28 CFR §36.201(b)

///
///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES        CASE NO. 2:14-cv-0978-DSF-MAN

7

1    13.    At all times stated herein, defendants' and each of them with the knowledge that

2    each of them had a continuing obligation to identify and remove architectural barriers where it

3    was readily achievable to do so, failed to adopt a transition plan to provide better and/or

4    compliant access to the subject accommodation.

5    14.    At all times referred to herein and continuing to the present time, defendants, and

6    each of them, advertised, publicized and held out the formerly known COMFORT INN now

7    QUALITY INN as being handicapped accessible and handicapped usable.

8    15.    On or about April 26, 2013, April 27, 2013, October 10, 2013, October 11, 2013,

9    October 12, 2013, July 20, 2014, August 29, 2014, January 16, 2015, January 17, 2015 and

10   January 18, 2015, plaintiff BYRON CHAPMAN was an invitee and guest at the subject

11   COMFORT INN/QUALITY INN, with his wife, Judi Chapman or daughter, Kelli Morel, for

12   purposes of having lodging so as to facilitate their plans to visit Disneyland.

13   16.    After sending notice letters on December 11, 2009 and August 13, 2012 and

14   phone calls and emails, to the landlord and/or tenant about access problems, plaintiff BYRON

15   CHAPMAN had reasonable belief that the requisite number of compliant guest rooms for the

16   disabled would be provided. Plaintiff then returned to the subject COMFORT INN/QUALITY

17   INN, for the purposes of participating in the goods and services provided and to see whether this

18   public accommodation had been made more accessible.  Almost a quarter of a century has now

19   passed since the Americans with Disabilities Act of 1990 ("ADA") took effect.  On or about

20   December 11, 2009, plaintiff BYRON CHAPMAN wrote to management at the COMFORT

21   INN.  He wrote:

22         "Last week I stayed at your hotel at 1251 N. Harbor Ave.,
           Anaheim, CA 92801. During that stay I noticed several
23         possible disability barriers and code violations, which could
           pertain to the C.B.C. (Calif. Building Codes) and the ADA
24         (Americans with Disabilities Act) which was sign into federal
           law in 1990. The barriers were in various areas, such as the
25         exterior, lobby and disability room #124. Please contact me
           in writing by mail (like a FedEx or similar type company that
26         provides that type of service to help ensure I get your written
27         response.

28

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES        CASE NO. 2:14-cv-0978-DSF-MAN

Please list the corrections needed and give me your action plan to become fully compliance for the disabled. Please write me within four weeks from the date of this letter. Also, please have all of the corrections made within four months from the date of this letter. I look forward to doing business with you again once you are fully compliant for disability access. Please write me back and send it via FedEx or a company with similar mailing tracking capabilities to ensure I receive it in time. Once again for your convenience and assistance, listed below is several resources to help you get started. ADA (Americans with Disabilities Act) info ph. #1-800-514-0301 ask for a copy of the ADAAG (Americans with Disabilities Act Accessibility Guide). For Calif. Codes (CBC) Calif. Building Codes, contact your cities building department and ask for the ADA Coordinator if one is available I look forward to your completion and achievement of full compliance in written response. Thank you in advance for your expedited action, completion and assistance in this matter."

Plaintiff BYRON CHAPMAN received no response.

Plaintiff BYRON CHAPMAN letter of August 13, 2012, stated:

"I sent a letter to your business in December of 2009, addressing barriers with your parking, lobby, disability room and breakfast areas. All of these areas have barriers which prevent me from enjoying my stay at your hotel at 1251 N. Harbor Blvd., Anaheim, CA 92801. I have since then stayed at your hotel many times and still no corrections of barriers for the disabled. Please send me a written response stating that you will have your hotel (address listed above) in full compliance within four weeks from the date of this letter. After all you have had since 1990 and most recent as December 2009 to achieve full compliance for the disabled and use of your hotel. To help get you started and for your convenience and assistance, I have listed below a few suggestions on who to contact to get started. Americans with Disabilities Act (ADA) info ph. #1-800-514-0301 ask for a copy of the ADAAG (Americans with Disabilities Act Accessibility Guide). For Calif. Building Codes, contact your cities building dept. and ask for the ADA Coordinator if one is available. You can hire someone.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES        CASE NO. 2:14-cv-0978-DSF-MAN

Make sure they are very knowledgeable with both Calif. and Federal accessibility code and apply the most stringent code. Thank you in advance for your help and assistance in this matter."

Plaintiff BYRON CHAPMAN did not receive a response.

17.     On or about December 7, 2009, plaintiff BYRON CHAPMAN was sold room #124 and on or about July 18, 2011 and November 13, 2011, plaintiff BYRON CHAPMAN was sold room #118.  Both rooms were touted by defendants as being ADAAG compliant.  While plaintiff BYRON CHAPMAN could make use of these two (2) rooms, plaintiff encountered many architectural barriers that posed difficulties and caused plaintiff discomfort.  Plaintiff BYRON CHAPMAN believed this public accommodation would be made fully compliant.

18.     At all times prior to August 13, 2012, when plaintiff BYRON CHAPMAN called to reserve an accessible guest room, he was told in substance: no disabled rooms were available now but by the time you arrive (plaintiff) hopefully we will have a disabled room available for you and if so will save it for you.  After August 13, 2012, plaintiff BYRON CHAPMAN was unable to reserve any room designated by the defendants as being accessible and even though a guest room was requested upon his arrival, plaintiff BYRON CHAPMAN was given a non-accessible guest room.

19.     At all times stated herein, plaintiff BYRON CHAPMAN sought a reservation and always asked for an accessible guest room.

20.     At all times commencing on or about but after August 13, 2012, plaintiff BYRON CHAPMAN was never provided an accessible guest room.

21.     At all times commencing on or about but after August 13, 2012, defendants and each of them, adopted a plan, practice and procedure of informing plaintiff BYRON CHAPMAN upon his requesting an accessible guest room that in substance: all accessible guest rooms were not available and some booked for extended periods of time.

///

///

///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES          CASE NO. 2:14-cv-0978-DSF-MAN

22.     On or about the following dates, plaintiff BYRON CHAPMAN had requested an accessible room well in advance of his arrival, but upon his arrival, he was sold the following inaccessible guest rooms: #116 - April 26, 2013 and April 27, 2013 (accompanied by Kelli Morel); #138 - October 10, 2013, October 11, 2013 and October 12, 2013 (accompanied by Kelli Morel); #224 - July 20, 2014 (alone); #108 - August 29, 2014 (accompanied by Judi Chapman).

23.     At all times stated herein, if defendants and each of them had the requisite number of accessible guest rooms by classification, it would mathematically provide disabled persons and plaintiff greater access.

24.     On or about August 30, 2014, and thereafter, plaintiff would have returned to COMFORT INN/QUALITY INN, but was deterred from returning for the fear that once he returned, he would encounter all of the same architectural barriers as on the first visit and that not even the easiest barrier(s) would have been removed such as the following: providing an accessible lobby, parking or usable but not fully compliant accessible guest room(s), to make it easier to enjoy the goods, services and opportunities afforded by this public accommodation.

25.     Rooms designated by defendants in fact are not accessible to the disabled. Plaintiff BYRON CHAPMAN was sold room #124 on December 7, 2009, and room #118 on July 18, 2011 and November 13, 2011.  In those two (2) rooms, plaintiff BYRON CHAPMAN encountered the following architectural barriers:

1.     no fixed shower seat;

2.     lavatory aprons is too low;

3.     clothes rod is too high;

4.     very high thresholds in excess of ¾";

5.     no clear floor space in room between dresser, tv stand and the end of two beds;

6.     clear floor space between the two (2) beds is less than 30"

7.     bathroom towel holder is too high;

8.     no grab bar on wall to shower seat to transfer;

9.     light switch above bed, can't reach too high;

10.    p-trap under sink partially wrapped;

11.    air conditioner/heat controls are not reachable;

12.    curtain rod to open or close is not reachable; and

13.    table in room, no clear floor space to use desk (bed in way of path).

26.    On or about the following dates, plaintiff BYRON CHAPMAN was sold the following room even though he called to reserve an accessible guest room approximately two (2) months prior to his arrival and if accompanied it is herein noted:

| DATE: | ROOM #: | ACCESSIBLE RM. YES / NO | CALLED FOR RESERVATION: | PERSON(S) WITH PLAINTIFF: |
|---|---|---|---|---|
| April 26-27, 2013 | 116 | NO | 2 months in advance (Feb. 2013) | Mrs. Kelli Morel (daughter) |
| October 10-12, 2013 | 138 | NO | 2 months in advance | Mrs. Kelli Morel (daughter) |
| July 20, 2014 | 224 | NO | 2 months in advance | alone |
| August 29, 2014 | 108 | NO | July 28, 2014 | Judi Chapman (wife) |
| January 16 - 18, 2015 | 110 | NO | January 7, 2015 | alone |

27.    At the times stated herein, where plaintiff BYRON CHAPMAN was compelled to stay in rooms: #108, 116, 138 and 224, he encountered the following architectural barriers and had the following adverse experiences:

1.    high threshold entering and exiting room (difficult to transverse over in wheelchair);

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES        CASE NO. 2:14-cv-0978-DSF-MAN

2.      very narrow path between dresser and end of beds;

3.      could not reach the curtain rods to open or close them (no path of travel);

4.      could not reach the ac/heater controls (no path of travel to them);

5.      had to use cane to get into restroom to use water closet;

6.      could not take shower had to take a sponge bath (no accessible tub/shower);

7.      no grab bars to use water closet (making wheelchair transfering difficult);

8.      very narrow space between bed(s) (difficult to wheel between);

9.      could not use table (not enough space);

10.     towel racks too high to reach; and

11.     closet rode is too high to hang clothes.

28.     On or about January 16, 2015 through January 18, 2015, plaintiff BYRON CHAPMAN was sold room #110 which was represented to be handicap accessible; it was not. Plaintiff BYRON CHAPMAN encountered the following architectural: a high threshold going in; no grab bars; no adjustable shower; racks are too high; lavatory apron is too low; and the closet poles are too high.  Plaintiff BYRON CHAPMAN in attempting to use these elements had difficulty (i.e., stress, strain, and annoyance).

29.     At all times stated herein, plaintiff BYRON CHAPMAN encountered built-up ramps between the parking stalls, which placed plaintiff in danger of damaging the ramp of his van, and plaintiff would therefore have to take up two (2) parking stalls and feared that someone might vandalize his vehicle for taking up the two (2) spaces.

30.     At all times stated herein, plaintiff BYRON CHAPMAN encountered a registration counter which was too high (48") for plaintiff to use.  This made it difficult for plaintiff to sign registration papers and present his credit card.

31.     At all times stated herein, plaintiff BYRON CHAPMAN encountered a rubber mat and the entrance to the lobby.  When plaintiff BYRON CHAPMAN drove his wheelchair on the mat, it was loose and crumpled.  On one occasion, the mat got caught in plaintiff's wheels. Plaintiff BYRON CHAPMAN had to use utmost care when traversing the mat.

32.     At all times stated herein, plaintiff BYRON CHAPMAN attempted to use the breakfast room, but due to counter height, it was difficult for plaintiff BYRON CHAPMAN to reach items.  Plaintiff had trouble and difficulty getting between the tables, because the tables were too close together and not usable due to design of tables.

33.     Therefore, at said times and place, plaintiff BYRON CHAPMAN,  encountered the following architectural barriers as stated herein or lack thereof and/or "elements" and "facilities" which constituted architectural barriers and/or categorical architectural barriers and a denial of the proper and legally required access to a public accommodation to persons with physical disabilities including, but not limited to:

a.     lack of (proper) disabled parking signage;

b.     lack of handicapped accessible guest room with two beds and bathroom within;

c.     lack of the requisite number of accessible guest rooms by classification;

d.     lack of an accessible swimming pool;

e.     lack of curb cuts;

f.     lack of signage, policies, procedures and guidelines to ensure the person(s) with disabilities to the maximum extent possible have an opportunity to share in the same goods, services and opportunities as those afforded to able-bodied persons;

g.     on personal knowledge, information and belief, other public facilities and elements too numerous to list were inaccessible to plaintiff(s) and for use by other persons with physical disabilities similarly situated.

h.     lack of a reservation policy, practice and procedure to "hold" disabled guest rooms for persons with disabilities before selling said rooms to the general public;

i.     plaintiff is informed and believes defendants lack a policy, practice and procedure of having available guest rooms for persons with disabilities. (Plaintiff seeks the implementation of a policy, practice and procedure that handicapped accessible guest rooms will not be sold unless specifically requested or until all other rooms are sold to the general public to ensure the availability of guest rooms to persons with disabilities;

///

///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES          CASE NO. 2:14-cv-0978-DSF-MAN

j.      a policy specifically targeting plaintiff BYRON CHAPMAN implemented on or about August 15, 2012, denying that any alleged accessible guest room(s) was available to him to reserve and/or use; and

k.      a policy not to reserve an alleged accessible guest room(s) to a disabled person but to state in substance: an accessible room is not currently available to reserve, but hopefully upon your arrival, an accessible room will be available.

34.     Specific architectural barriers encountered by plaintiff BYRON CHAPMAN at times and place herein in addition to categorical architectural barriers stated herein and the respective difficulties experienced by plaintiff as stated herein, the barriers include but are not limited to:

**PARKING:**

•       there are eighty-eight (88) parking spaces of which five (5) were designated handicap accessible. One van accessible stall across from the registration counter has the access aisle on the wrong side. The tow away sign has no name and number to reclaim vehicles. There are four (4) parking spaces in the mode of the universal design (2 spaces sharing an access aisle).  The first of the universal design stalls is located by the 3 rooms designated as accessible (rooms: 120, 122, & 124).  The access aisle has a built up curb ramp and lacks the tow away sign.  The second of the universal design stalls is located by rooms 113-115).  The access aisle has a built up curb ramp and lacks the tow away sign and has no name and number to reclaim vehicles;

•       no disabled parking signage;

•       no van accessible parking stall(s) and access aisle(s);

•       no tow-a-way signage with phone number;

•       non complying slopes and cross slopes of the parking area and or access aisle(s);

///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES        CASE NO. 2:14-cv-0978-DSF-MAN

1  •   non complying van accessible parking stall access aisle(s);

2  •   unidentifiable / non complying ISA symbol and signage on the surface of

3      parking stall(s);

4  **LOBBY/ENTRANCE:**

5  •   the registration counter in the office is too high (approximately 48");

6  •   the outside registration window/counter is too high (approximately 42");

7  •   loose mat at the entrance;

8  **BREAKFAST ROOM:**

9  •   inaccessible food counters (approximately 39" plus);

10 •   inaccessible table seating (table height and noncomplying pedestal);

11 •   lack of required five (5) percent accessible seating;

12 •   service counter too high (approximately 38");

13 •   narrow aisle(s) between table(s);

14 **OUTSIDE STAIRS:**

15 •   this is a three (3) story facility with outside stairs; the stairs have open

16     risers;

17 •   no safety striping on steps;

18 **PEDESTRIAN RAMP:**

19 •   there is a pedestrian ramp between rooms 133 and 134 from the outside

20     parking area to the walkway;

21 •   the ramp however does not have edge protectors and does not have

22     handrails;

23 **SWIMMING POOL & AREA(S):**

24 •   outside pool not accessible:

25 •   latch to gate requires tight pinching and grasping; also too high at approx

26     63";

27 ///

28 ///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES       CASE NO. 2:14-cv-0978-DSF-MAN

1            •      no handicap lifting device;

2            •      tables in swimming pool area not accessible because of big round

3                   pedestals;

4          **EXEMPLAR ALLEGED ACCESSIBLE GUEST ROOM:**

5            •      inaccessible exemplar guest room #111;

6            •      lavatory apron clearance approximately 24";

7            •      peephole approximately 61";

8            •      clothing rod approximately at 66";

9            •      POI of hair dryer approximately 53";

10           •      bathroom towel rack approximately 56";

11           •      bathroom grab bar;

12           •      no hand held operable shower unit;

13           •      no stationary shower chair;

14           •      unwrapped p-trap;

15           •      16" clear space between lavatory counter and top of water closet; foot print

16                 of bathroom excluding bathtub is approximately 72" x 92";

17         **HOTELS/MOTELS**

18          •      at all times stated herein, the COMFORT INN/QUALITY INN had one

19                hundred nineteen (119) rooms. Of those rooms, five (5) were to be fully

20                accessible with two (2) of those having roll in showers; COMFORT

21                INN/QUALITY INN did not have any 2010 ADA Standard accessible

22                guest room(s);

23          •      at all times stated herein, defendants and each of them, claimed that there

24                were three (3) accessible guest rooms: rooms #120, #122, & #124; they

25                were not accessible;

26    ///

27    ///

28    ///

1       •    at all times stated herein, plaintiff BYRON CHAPMAN encountered,

2             amongst other barriers in the guest rooms in which he stayed in, the

3             following and had the following adverse experiences: high thresholds

4             made it difficult to wheel into the guest room(s); lack of stationary shower

5             seats and grab bars in the tub/shower area made it difficult to bathe; low

6             lavatory aprons prevented plaintiff from wheeling underneath the apron so

7             as to easily use the lavatory;

8       •    noncomplying registration counter;

9       •    inaccessible guest room(s);

10      •    noncomplying shower and elements within;

11      •    noncomplying lights;

12      •    noncomplying peephole in guestroom(s); and

13      •    noncomplying lavatories;

14      •    room #110 was completely inaccessible.

15 Therefore, as a legal result of encountering each of said elements, plaintiffs experienced one, all,

16 or a combination of the following difficulties: stress, strain, difficulty, and discomfort to his

17 upper extremities in attempting to and/or using said elements also causing anxiety,

18 disappointment, and embarrassment.

19      35.    At all times as stated herein, plaintiff BYRON CHAPMAN encountered

20 architectural barrier(s) as stated herein and/or had personal knowledge of said barrier(s) and

21 knew it would be a futile gesture to attempt to overcome it/them because of his disability.

22      36.    At all times stated herein, it was "readily achievable" for defendants to remove

23 some and/or all of the architectural barriers complained of over a reasonable period of time from

24 the date that defendants initially took possession to meet the affirmative duty to identify and

25 remove architectural barriers where it is readily achievable to do so.  In that regard, defendants

26 could have but did not avail themselves of the tax deduction and tax credits provided by  Internal

27 Revenue Services ("IRS") codes 44 and 190, which apply to the costs of barrier removal.

28 ///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES     CASE NO. 2:14-cv-0978-DSF-MAN

37.      At all times and place, each architectural element as stated herein that did not strictly comply with or substantially comply with the ADAAG minimum requirements constituted an architectural barrier which precluded plaintiff BYRON CHAPMAN from full and equal opportunities afforded to non disabled persons to the goods and services of COMFORT INN/QUALITY INN.

38.      Plaintiff BYRON CHAPMAN was and is deterred from returning to COMFORT INN/QUALITY INN so long as architectural barrier(s) complained of that he encountered, as stated herein are not ADAAG compliant.

39.      At said times and place, when plaintiff BYRON CHAPMAN encountered the architectural barriers as stated herein, plaintiff BYRON CHAPMAN in seeing a barrier(s) and/or attempting to overcome the barriers to gain access experienced any one or combination of physical difficulty, discomfort, embarrassment, stress, strain, fatigue, anger, annoyance and disappointment.  This arose from plaintiff's physical inability to effectively use his upper extremities to easily overcome the architectural barriers as stated herein.  This constitutes a denial of full and equal access to the subject public accommodation and a denial of the opportunity to independently enjoy and participate in the opportunities, goods and services offered to non disabled persons and patrons, invitees and guests.

40.      Said architectural barrier(s) as stated herein deprived and deterred plaintiff BYRON CHAPMAN the same full and equal access that a non wheelchair user/non disabled person would enjoy while engaging in the goods, service and opportunities offered at the subject COMFORT INN/QUALITY INN.

41.      At all times stated herein, the existence of architectural barriers at defendants' place of public accommodation evidenced "actual notice" of defendants' intent not to comply with the Americans with Disabilities Act of 1990 either then, now or in the future.

///

///

///

///

42.     As a legal result of defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company's failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to plaintiff and other persons with disabilities, plaintiff suffered the damages as alleged herein.

43.     As a legal result of defendants' actions or omissions as stated herein and defendants' denial of access to plaintiff to all or part of the facilities constituting the public accommodations which comprise the COMFORT INN/QUALITY INN, plaintiff was wrongfully evicted and/or rejected by defendants, and each of them.

44.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to his rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.

45.     Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.  No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences.  No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

46.     Defendants', and each of their, failure to remove the architectural barriers complained of herein created, at the time of plaintiff BYRON CHAPMAN's first visit to said public accommodation, and continues to create continuous and repeated exposure to substantially the same general harmful conditions which caused plaintiff BYRON CHAPMAN harm as stated herein.

///

47.     Plaintiff BYRON CHAPMAN was denied his rights to equal access to a public facility by defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, because defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company maintained a hotel without access for persons with physical disabilities to its facilities, including but not limited to the parking, lobby, breakfast room, guest rooms, pool and pedestrian ramp, and other public areas as stated herein, and continue to the date of filing this complaint to deny equal access to plaintiff and other persons with physical disabilities in these and other ways.

48.     Construction alterations, if any, carried out by defendants have also triggered access requirements under both California law and the Americans with Disabilities Act of 1990.

49.     Defendants may have intentionally undertaken to modify and alter existing building(s), and may have failed to make them comply with accessibility requirements under the requirements of ADAAG and California Building Code.

50.     Defendants have been negligent in their affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

51.     Because of defendants' violations, plaintiff and other persons with physical disabilities are unable to use public facilities such as those owned and operated by defendants on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act of 1990, Civil Code §51, Civil Code §54.1 and Health & Safety Code §19955, *et seq.* and other accessibility law as pled herein.  Plaintiff seeks an order from this court compelling defendants to make the COMFORT INN/QUALITY INN accessible to persons with disabilities.

52.     Plaintiff, as described hereinbelow, seeks injunctive relief to require the COMFORT INN/QUALITY INN to be made accessible to meet the requirements of both California law and the Americans with Disabilities Act of 1990, whichever is more restrictive, so long as defendants operate the COMFORT INN/QUALITY INN as a public facility.

53.   Plaintiff believes that even with service of the summons and complaint on defendant(s) and each of them, that defendant(s) will not , under their "continuing obligation" immediately undertake remedial action to identify and remove architectural barriers.

54.   Plaintiff BYRON CHAPMAN seeks damages for violation of his civil rights on April 26, 2013, April 27, 2013, October 10, 2013, October 11, 2013, October 12, 2013, July 20, 2014, August 29, 2014, January 16, 2015, January 17, 2015 and January 18, 2015 and **deterrence occasion(s)** and seeks statutory damages of not less than $4,000, pursuant to Civil Code §52(a) or alternatively $1000 pursuant to Civil Code §54.3, for each day after his visit that the trier of fact (court/jury) determines was the date that some or all remedial work should have been completed under the standard that the landlord and tenant had an ongoing duty to identify and remove architectural barriers where it was readily achievable to do so, which deterred plaintiff BYRON CHAPMAN from returning to the subject public accommodation because of his knowledge and/or belief that neither some or all architectural barriers had been removed and that said premises remains inaccessible to persons with disabilities whether a wheelchair user or otherwise.  The acts and omission of defendants, and each of them, in failing to provide the required accessible public facilities at the time of plaintiff's visit and injuries, indicate actual and implied malice toward plaintiff, and despicable conduct carried out by defendants, and each of them, with a willful and conscious disregard for the rights and safety of plaintiff and other similarly situated persons, and justify a trebling of damages as provided by Civil Code §§52(a) and 54.3, in order to make a more profound example of defendants, and each of them, to other operators and landlords of other hotels, motels and other public facilities, and to punish defendants and to carry out the purposes of the Civil Code §§ 51, 51.5 and 54.

55.   At all times stated herein and for post complaint occasions, plaintiff has an absolute unfettered civil right to return to the public accommodation(s) complained of within thirty (30) day intervals until defendants remove all architectural barriers under their continuing obligation to identify and remove architectural barriers.

///

///

56.     Plaintiff is informed and believes and therefore alleges that defendants TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, and each of them, caused the subject building(s) which constitute the COMFORT INN/QUALITY INN to be constructed, altered and maintained in such a manner that persons with physical disabilities were denied full and equal access to, within and throughout said building(s) of the subject hotel and were denied full and equal use of said public facilities.  Furthermore, on information and belief, defendants have continued to maintain and operate said hotel and/or its building(s) in such conditions up to the present time, despite actual and constructive notice to such defendants that the configuration of COMFORT INN/QUALITY INN and/or its building(s) is in violation of the civil rights of persons with physical disabilities, such as plaintiff BYRON CHAPMAN, and other members of the disability community.  Such construction, modification, ownership, operation, maintenance and practices of such public facilities are in violation of Civil Code §§51, 51.5 and 54, Health and Safety Code §19955, and the ADA, 42 U.S.C. §12101, *et seq.*

57.     Defendants' actual and constructive notice that the physical configuration of the facilities including, but not limited to, architectural barriers constituting the COMFORT INN/QUALITY INN and/or building(s) was in violation of the civil rights of persons with physical disabilities, such as plaintiff, includes, but is not limited to, coming into contact with public accommodations with accessible elements and facilities since January 26, 1991, communications with invitees and guests, plaintiff BYRON CHAPMAN himself, possibly sponsors of conferences, owners of restaurants, hotels, motels and businesses, notices they obtained from governmental agencies upon modification, improvement, or substantial repair of the subject premises and other properties owned by these defendants, newspaper articles and trade publications regarding the Americans with Disabilities Act of 1990 and other access laws, public service announcements by former U.S. Attorney General Janet Reno between 1993 and 2000, and other similar information.  Defendants' failure, under state and federal law, to make the COMFORT INN/QUALITY INN accessible is further evidence of defendants' conscious disregard for the rights of plaintiff and other similarly situated persons with disabilities.

1  Despite being informed of such effect on plaintiff and other persons with physical disabilities due

2  to the lack of accessible facilities, defendants, and each of them, knowingly and willfully refused

3  to take any steps to rectify the situation and to provide full and equal access for plaintiff and other

4  persons with physical disabilities to the COMFORT INN/QUALITY INN.  Said defendants, and

5  each of them, have continued such practices, in conscious disregard for the rights of plaintiff and

6  other persons with physical disabilities, up to the date of filing of this complaint, and continuing

7  thereon.  Defendants had further actual knowledge of the architectural barriers referred to herein

8  by virtue of the demand letter addressed to the defendants and served concurrently with the

9  summons and complaint.  Said conduct, with knowledge of the effect it was and is having on

10 plaintiff and other persons with physical disabilities, constitutes despicable conduct in conscious

11 disregard of the rights and safety of plaintiff and of other similarly situated persons, justifying the

12 imposition of treble damages per Civil Code §§52 and 54.3.

13      58.     Plaintiff BYRON CHAPMAN and the disability community, consisting of persons

14 with disabilities, would, could and will return to the subject public accommodation when it is

15 made accessible to persons with disabilities.

16 **I.     FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC**

17 **ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH**
   **DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq.*)**

18 (On behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS,
   INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT

19 INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company,
   inclusive)

20 (42 U.S.C. §12101, *et seq.*)

21      59.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

22 the allegations contained in paragraphs 1 through 58 of this complaint.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

60.     Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

61.     Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

62.     As part of the Americans with Disabilities Act of 1990, Public Law 101-336 (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq.*).  Among the public accommodations identified for purposes of this title was:

> (7)     PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -
>
> ---
>
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor.

42 U.S.C. §12181(7)(A)

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES          CASE NO. 2:14-cv-0978-DSF-MAN

63.     Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

64.     The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

(I)     the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

(ii)     a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

(iii)     a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv)     a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(v)     where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

The acts of defendants set forth herein were a violation of plaintiff's rights under the ADA, Public Law 101-336, and the regulations promulgated thereunder, 28 CFR Part 36, *et seq.* - Effective January 31, 1993, the standards of the ADA were also incorporated into California Civil Code §51, making available the damage remedies incorporated into Civil Code §51 and 52(a) and 54.3.

///

65.    The removal of the barriers complained of by plaintiff as hereinabove alleged were at all times after January 26, 1992 "readily achievable" as to the subject building(s) of COMFORT INN/QUALITY INN pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv).  On information and belief, if the removal of all the barriers complained of herein together was not "readily achievable," the removal of each individual barrier complained of herein was "readily achievable."  On information and belief, defendants' failure to remove said barriers was likewise due to discriminatory practices, procedures and eligibility criteria, as defined by 42 U.S.C. §12182 (b)(2)(A)(i)and (ii).

66.    Per 42 U.S.C. §12181 (9), the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."  The statute defines relative "expense" in part in relation to the total financial resources of the entities involved.  Plaintiff alleges that properly repairing, modifying, or altering each of the items that plaintiff complains of herein were and are "readily achievable" by the defendants under the standards set forth under §301(9) of the Americans with Disabilities Act.  Furthermore, if it was not "readily achievable" for defendants to remove each of such barriers, defendants have failed to make the required services available through alternative methods which were readily achievable.

67.    On information and belief, construction work on, and modifications of, the subject building(s) of COMFORT INN/QUALITY INN occurred after the compliance date for the Americans with Disabilities Act, January 26, 1992, independently triggering access requirements under Title III of the ADA.

68.    Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq.*, plaintiff is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or have reasonable grounds for believing that plaintiff is about to be subjected to discrimination in violation of §302.  Plaintiff is deterred from returning to or making use of the public facilities complained of herein so long as the premises and defendants' policies bar full and equal use by persons with physical disabilities.

///

69.    42 U.S.C. 12188 (a)(1) states: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions."  Pursuant to this section, plaintiff BYRON CHAPMAN has not returned to defendants' premises since on or about January 18, 2015, but on information and belief, alleges that defendants have continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation.  Pursuant to 42 USC §12188(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

70.    Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees.  Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

## II.    SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, ET SEQ.

(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive)

(California Civil Code §§54, 54.1, 54.3, *et seq.*)

71.    Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 70 of this complaint.

72.    At all times relevant to this action, California Civil Code §54 has provided that persons with physical disabilities are not to be discriminated against because of physical handicap or disability.  This section provides that:

(a) Individuals with disabilities . . . have the same rights as the general public to full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, and other public places.

///

73.    California Civil Code §54.1 provides that persons with disabilities shall not be denied full and equal access to places of public accommodation or facilities:

(a)(1) Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats, or any other public conveyances or modes of transportation (whether private, public, franchised, licensed, contracted, or otherwise provided), telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Civil Code §54.1(a)(1)

74.    California Civil Code §54.1 further provides that a violation of the Americans with Disabilities Act of 1990 constitutes a violation of section 54.1:

(d) A violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act.

Civil Code §54.1(d)

75.    Plaintiff BYRON CHAPMAN is a person within the meaning of Civil Code §54.1 whose rights have been infringed upon and violated by the defendants, and each of them, as prescribed by Civil Code §§54 and 54.1.  Each specific architectural barrier which defendants knowingly and willfully fail and refuse to remove constitutes a separate act in violation of Civil Code §§54 and 54.1.  Plaintiff has been and continue to be denied full and equal access to defendants' COMFORT INN/QUALITY INN.

///
///
///
///
///
///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES        CASE NO. 2:14-cv-0978-DSF-MAN

29

As a legal result, plaintiff is entitled to seek damages pursuant to a court or jury determination, in accordance with California Civil Code §54.3(a) for each day on which he visited or have been deterred from visiting the COMFORT INN/QUALITY INN because of his knowledge and belief that the subject inn is inaccessible to persons with disabilities.  California Civil Code §54.3(a) provides:

> Any person or persons, firm or corporation, who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than . . .one thousand dollars ($1,000) and . . . attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1 and 54.2.

Civil Code §54.3(a)

76.     On or about April 26, 2013, April 27, 2013, October 10, 2013, October 11, 2013, October 12, 2013, July 20, 2014, August 29, 2014, January 16, 2015, January 17, 2015 and January 18, 2015, and **deterrence occasion(s)** plaintiff BYRON CHAPMAN suffered violations of Civil Code §§54 and 54.1 in that plaintiff BYRON CHAPMAN was denied access to parking, lobby, breakfast room, guest rooms, pool and pedestrian ramp and other public facilities as stated herein at the COMFORT INN/QUALITY INN and on the basis that plaintiff BYRON CHAPMAN was a person with physical disabilities.

77.     As a result of the denial of equal access to defendants' facilities due to the acts and omissions of defendants, and each of them, in owning, operating and maintaining these subject public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights, including, but not limited to his rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.

///
///
///
///

78.     Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental distress, mental suffering, mental anguish, which includes, but is not limited to, shame, humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expected and naturally associated with a person with physical disabilities encountering architectural barrier(s) as stated herein and being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.  No claim is being made for mental and emotional distress over and above that is usually associated with the encountering of architectural barriers and legally resulting in adverse experiences.  No expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages.

79.     Plaintiff has been damaged by defendants', and each of their, wrongful conduct and seeks the relief that is afforded by Civil Code §§54 and 54.1, 54.3 for violation of plaintiff's rights as a person or an entity that represents persons with physical disabilities on or about April 26, 2013, April 27, 2013, October 10, 2013, October 11, 2013, October 12, 2013, July 20, 2014, August 29, 2014, January 16, 2015, January 17, 2015 and January 18, 2015 and **deterrence occasion(s)**, and on a continuing basis since then, including statutory damages, a trebling of all of actual damages, general and special damages available pursuant to §54.3 of the Civil Code according to proof.

80.     As a result of defendants', and each of their, acts and omissions in this regard, plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's rights and enforce the provisions of the law protecting access for persons with physical disabilities and prohibiting discrimination against persons with physical disabilities.  Pursuant to the provisions of Civil Code §54.3, plaintiff therefore will seek recovery in this lawsuit for all reasonable attorneys' fees and costs incurred if deemed the prevailing party.  Additionally, plaintiff's lawsuit is intended not only to obtain compensation for damages to plaintiff, but also to compel the defendants to make their facilities accessible to all members of the public with disabilities, justifying public interest attorneys' fees, if deemed the prevailing party, pursuant to the provisions of §1021.5 of the Code of Civil Procedure.

///

III.   **THIRD CAUSE OF ACTION FOR DENIAL OF ACCESSIBLE SANITARY FACILITIES IN VIOLATION OF HEALTH & SAFETY CODE §19955, *ET. SEQ.***
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive)
(Health & Safety Code §19955, *et seq.*)

81.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 80 of this complaint.

82.     Health & Safety Code §19955 provides in pertinent part:

> The purpose of this part is to insure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code. For the purposes of this part "public accommodation or facilities" means a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers. When sanitary facilities are made available for the public, clients or employees in such accommodations or facilities, they shall be made available for the handicapped.

83.     Health & Safety Code §19956, which appears in the same chapter as §19955, provides in pertinent part, "accommodations constructed in this state shall conform to the provisions of Chapter 7 (commencing with Sec. 4450) of Division 5 of Title 1 of the Government Code . . . ." Health & Safety Code §19956 was operative July 1, 1970, and is applicable to all public accommodations constructed or altered after that date. On information and belief, portions of the COMFORT INN/QUALITY INN and/or of the building(s) were constructed and/or altered after July 1, 1970, and substantial portions of the QUALITY INN and/or the building(s) had alterations, structural repairs, and/or additions made to such public accommodations after July 1, 1970, thereby requiring said inn and/or building to be subject to the requirements of Part 5.5, §19955, *et seq.*, of the Health & Safety Code upon such alteration, structural repairs or additions per Health & Safety Code §19959.

///
///
///
///

84.     Pursuant to the authority delegated by Government Code §4450, *et seq*, the State Architect promulgated regulations for the enforcement of these provisions.  Effective July 1, 1982, Title 24 of the California Building Standards Code adopted the California State Architect's Regulations and these regulations must be complied with as to any alterations and/or modifications of the COMFORT INN/QUALITY INN and/or the building(s) occurring after that date.  Construction changes occurring prior to this date but after July 1, 1970 triggered access requirements pursuant to the "ASA" requirements, the American Standards Association Specifications, A117.1-1961.  On information and belief, at the time of the construction and modification of said building, all buildings and facilities covered were required to conform to each of the standards and specifications described in the American Standards Association Specifications and/or those contained in the California Building Code.

85.     Hotels and motels such as the COMFORT INN/QUALITY INN are "public accommodations or facilities" within the meaning of Health & Safety Code §19955, *et seq*.

86.     As a result of the actions and failure to act of defendants, and as a result of the failure to provide proper and legally handicapped-accessible public facilities, plaintiff was denied plaintiff's rights to full and equal access to public facilities and suffered a loss of plaintiff's civil rights and plaintiff's rights as a person with physical disabilities to full and equal access to public facilities.

87.     Attorneys' Fees -- As a result of defendants' acts and omissions in this regard, plaintiff has been required to incur legal expenses and hire attorneys in order to enforce plaintiff's civil rights and enforce provisions of the law protecting access for the persons with physical disabilities and prohibiting discrimination against the persons with physical disabilities, and to take such action both in plaintiff's own interests and in order to enforce an important right affecting the public interest.  Plaintiff, therefore, seeks in this lawsuit the recovery of all reasonable attorneys' fees incurred, pursuant to the provisions of the Code of Civil Procedure §1021.5.  Plaintiff additionally seeks attorneys' fees pursuant to Health & Safety Code §19953 and Civil Code §§54.3 and/or in the alternative, plaintiff will seek attorneys' fees, costs and litigation expenses pursuant to §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 200(a)-3(a)).

1  Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

2      88.      Plaintiff seeks injunctive relief for an order compelling defendants, and each of

3  them, to make the subject place of public accommodation readily accessible to and usable by

4  persons with disabilities.

5  **IV.    FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND
          EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES
6          AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET
          SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**
7          (On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS,
          INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT
8          INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company,
          inclusive)

9          (Civil Code §51, 51.5)

10     89.      Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

11  the allegations contained in paragraphs 1 through 88 of this complaint.

12     90.      Defendants' actions and omissions and failure to act as a reasonable and prudent

13  public accommodation in identifying, removing and/or creating architectural barriers, policies,

14  practices and/or procedures violates §51 of the Civil Code, the Unruh Civil Rights Act.  The

15  Unruh Act provides:

16          This section shall be known, and may be cited, as the Unruh
17          Civil Rights Act.

18          All persons within the jurisdiction of this state are free and
          equal, and no matter what their sex, race, color, religion, ancestry,
19          national origin, or **disability** are entitled to the full and equal
          accommodations, advantages, facilities, privileges, or services in all
20          business establishments of every kind whatsoever.

21          This section shall not be construed to confer any right or
          privilege on a person that is conditioned or limited by law or that is
22          applicable alike to persons of every sex, color, race, religion,
          ancestry, national origin, or **disability.**

23          Nothing in this section shall be construed to require any
24          construction, alteration, repair, structural or otherwise, or
          modification of any sort whatsoever, beyond that construction,
25          alteration, repair, or modification that is otherwise required by other
          provisions of law, to any new or existing establishment, facility,
26          building, improvement, or any other structure . . . nor shall anything
          in this section be construed to augment, restrict, or alter in any way
27          the authority of the State Architect to require construction,
          alteration, repair, or modifications that the State Architect otherwise
28          possesses pursuant to other . . . laws.
///

> A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section.

As the Unruh Act incorporates violations of the Americans with Disabilities Act of 1990, the "intent" of the defendants in not complying with barrier removal is not an issue.  Hence, the failure on the parts of defendants, as reasonable and prudent public accommodations, in acting or failing to act to identify and remove barriers can be construed as a "negligent per se" act of defendants, and each of them.

91.     The acts and omissions of defendants stated herein are discriminatory in nature and in violation of Civil Code §51.5:

> No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or **disability** of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.
>
> As used in this section, "person" includes any person, firm association, organization, partnership, business trust, corporation, limited liability company, or company.
>
> Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever, beyond that construction, alteration, repair or modification that is otherwise required by other provisions of law, to any new or existing establishment, facility, building, improvement, or any other structure . . . nor shall anything in this section be construed to augment, restrict or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other laws.

92.     Defendants' acts and omissions as specified have denied to the plaintiff full and equal accommodations, advantages, facilities, privileges and services in a business establishment, on the basis of physical disability, in violation of Civil Code §§51 and 51.5, the Unruh Civil Rights Act.  Furthermore, pursuant to the 1992 amendment to California Civil Code §51, "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

///

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES          CASE NO. 2:14-cv-0978-DSF-MAN

1    Plaintiff accordingly incorporates the entirety of his above cause of action for violation of the

2    Americans with Disabilities Act at ¶59, *et seq*., as if repled herein.

3        93.    As a result of the denial of equal access to defendants' facilities due to the acts and

4    omissions of defendants, and each of them, in owning, operating and maintaining these subject

5    public facilities, plaintiff BYRON CHAPMAN suffered violations of plaintiff's civil rights,

6    including, but not limited to his rights under Civil Code §§51, 52, 54, 54.1, and 54.3, *et seq*.

7        94.    Further, plaintiff BYRON CHAPMAN suffered emotional distress, mental

8    distress, mental suffering, mental anguish, which includes, but is not limited to, shame,

9    humiliation, embarrassment, upset, anger, frustration, disappointment and worry, expectedly and

10   naturally associated with a person with physical disabilities encountering architectural barrier(s)

11   as stated herein and being denied access, all to his damages as prayed hereinafter in an amount

12   within the jurisdiction of this court. No claim is being made for mental and emotional distress

13   over and above that is usually associated with the encountering of architectural barriers and

14   legally resulting in adverse experiences.  No expert testimony regarding this usual mental and

15   emotional distress will be presented at trial in support of the claim for damages.

16       95.    Plaintiff BYRON CHAPMAN is entitled to the rights and remedies of

17   §52(a) of the Civil Code, including trebling of actual damages (defined by §52(h) of the Civil

18   Code to mean "special and general damages"), as well as to reasonable attorneys' fees and

19   costs, as is allowed by statute, according to proof if deemed to be the prevailing party.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**PRAYER:**

Plaintiff prays that this court award damages and provide relief as follows:

**I.    PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, *et seq.*)**
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive)
(42 U.S.C. §12101, *et seq.*)

1.    For injunctive relief, compelling defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive, to make the COMFORT INN/QUALITY INN, located at 1251 North Harbor Boulevard, Anaheim, California, readily accessible to and usable by individuals with disabilities, per 42 U.S.C §12181, *et seq.*, and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to the goods, services, facilities, privileges, advantages and accommodations being offered;

2.    For attorneys' fees, litigation expenses and costs of suit, if plaintiff is deemed the prevailing party; and

3.    For such other and further relief as the court may deem proper.

**II.    PRAYER FOR SECOND CAUSE OF ACTION FOR DENIAL OF FULL AND EQUAL ACCESS IN VIOLATION OF CALIFORNIA CIVIL CODE §§54, 54.1 AND 54.3, *ET SEQ.***
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive)

(California Civil Code §§54, 54.1, 54.3, *et seq.*)

1.    For injunctive relief, compelling defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive, to make the COMFORT INN/QUALITY INN, located at 1251 North Harbor Boulevard, Anaheim, California, readily accessible to and usable by individuals with disabilities, per state law;

2.      Statutory damages as afforded by Civil Code §54.3 for the date of incident and for each occasion on which plaintiff was deterred from returning to the subject public accommodation;

3.      Attorneys' fees pursuant to Civil Code §54.3 and Code of Civil Procedure §1021.5, if plaintiffs are deemed the prevailing party;

4.      Treble damages pursuant to Civil Code §54.3;

5.      General damages according to proof;

6.      For all costs of suit;

7.      Prejudgment interest pursuant to Civil Code §3291; and

8.      Such other and further relief as the court may deem just and proper.

**III.    PRAYER FOR THIRD CAUSE OF ACTION FOR DENIAL OF ACCESSIBLE SANITARY FACILITIES IN VIOLATION OF HEALTH & SAFETY CODE §19955, *ET. SEQ.***
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive)
(Health & Safety code §19955, *et seq.*)

1.      For injunctive relief, compelling defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive, to make the COMFORT INN/QUALITY INN, located at 1251 North Harbor Boulevard, Anaheim, California, readily accessible to and usable by individuals with disabilities, per state law;

2.      For attorneys' fees pursuant to Code of Civil Procedure §1021.5, and/or, alternatively, Health & Safety Code §19953, if plaintiff is deemed the prevailing party;

3.      For all costs of suit;

4.      For prejudgment interest pursuant to Civil Code §3291;

5.      Such other and further relief as the court may deem just and proper.

///

///

///

**IV.     PRAYER FOR FOURTH CAUSE OF ACTION FOR DENIAL OF ACCESS TO FULL AND EQUAL ACCOMMODATIONS, ADVANTAGES, FACILITIES, PRIVILEGES AND/OR SERVICES IN VIOLATION OF CALIFORNIA CIVIL CODE §51, *ET SEQ.* (THE UNRUH CIVIL RIGHTS ACT)**
(On Behalf of Plaintiff BYRON CHAPMAN, and Against Defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive)
(California Civil Code §§51, 51.5, *et seq.*)

1.      For injunctive relief, compelling defendants RED ROOF INNS, INC., a Delaware Corporation; TERRY TOGNAZZINI, an individual dba COMFORT INN/QUALITY INN; and RR TOG LLC, a California Limited Liability Company, inclusive, to make the COMFORT INN/QUALITY INN, located at 1251 North Harbor Boulevard, Anaheim, California, readily accessible to and usable by individuals with disabilities, per state law;

2.      All statutory damages as afforded by Civil Code §52(a) for the date of incident and for each occasion on which plaintiff was deterred from returning to the subject public accommodation;

3.      Attorneys' fees pursuant to Civil Code §52(a), if plaintiff is deemed the prevailing party;

4.      General damages according to proof;

5.      Treble damages pursuant to Civil Code §52(a);

6.      For all costs of suit;

7.      Prejudgment interest pursuant to Civil Code §3291; and

8.      Such other and further relief as the court may deem just and proper.

Dated: February 10, 2015             THOMAS E. FRANKOVICH,
                                     *A PROFESSIONAL LAW CORPORATION*


                                     By: _____/s/Thomas E. Frankovich_____
                                             Thomas E. Frankovich
                                     Attorney for Plaintiff BYRON CHAPMAN

///

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated: February 10, 2015      THOMAS E. FRANKOVICH,
                           *A PROFESSIONAL LAW CORPORATION*

By: _____ /s/Thomas E. Frankovich_____
                Thomas E. Frankovich
Attorney for Plaintiff BYRON CHAPMAN

FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES     CASE NO. 2:14-cv-0978-DSF-MAN

40